Bellacosa, J.
(concurring). My vote to reverse and remit rests on a narrower view of what must be decided in this case than the plurality and dissenting opinions deem necessary.
The issue is solely whether petitioner qualifies as a member of a "family”, as that generic and broadly embracive word is used in the anti-eviction regulation of the rent-control apparatus. The particular anti-eviction public policy enactment is fulfilled by affording the remedial protection to this petitioner on the facts advanced on this record at this preliminary injunction stage. The competing public policy of eventually restoring rent-controlled apartments to decontrol, to stabilization and even to arm’s length market relationships is eclipsed in this instance, in my view, by the more pertinently expressed and clearly applicable anti-eviction policy.
Courts, in circumstances as are presented here where legislative intent is completely indecipherable (Division of Housing and Community Renewal, the agency charged with administering the policy, is equally silent in this case and on this issue), are not empowered or expected to expand or to constrict the meaning of the legislatively chosen word "family,” which could have been and still can be qualified or defined by the duly constituted enacting body in satisfying its separate branch responsibility and prerogative. Construing a regulation does not allow substitution of judicial views or preferences for those of the enacting body when the latter either fails or is unable ór deliberately refuses to specify criteria or definitional limits for its selected umbrella word, "family”, especially where the societal, governmental, policy and fiscal implications are so sweeping (Breitel, The Lawmakers, 65 Colum L Rev 749, 767-771; see also, Boreali v Axelrod, 71 NY2d 1, 11-12). For then, "the judicial function expands beyond the *215 molecular movements, in Holmes’ figure, into the molar” (Breitel, op. cit., at 770).
The plurality opinion favors the petitioner’s side by invoking the nomenclature of "nuclear”/”normal”/”genuine” family versus the "traditional”/’’legally recognizable” family selected by the dissenting opinion in favor of the landlord. I eschew both polar camps because I see no valid reason for deciding so broadly; indeed, there are cogent reasons not to yaw towards either end of the spectrum.
The application of the governing word and statute to reach a decision in this case can be accomplished on a narrow and legitimate jurisprudential track. The enacting body has selected an unqualified word for a socially remedial statute, intended as a protection against one of the harshest decrees known to the law — eviction from one’s home. Traditionally, in such circumstances, generous construction is favored. Petitioner has made his shared home in the affected apartment for 10 years. The only other occupant of that rent-controlled apartment over that same extended period of time was the tenant-in-law who has now died, precipitating this battle for the apartment. The best guidance available to the regulatory agency for correctly applying the rule in such circumstances is that it would be irrational not to include this petitioner and it is a more reasonable reflection of the intention behind the regulation to protect a person such as petitioner as within the regulation’s class of "family”. In that respect, he qualifies as a tenant in fact for purposes of the interlocking provisions and policies of the rent-control law. Therefore, under CPLR 6301, there would unquestionably be irreparable harm by not upholding the preliminary relief Supreme Court has decreed; the likelihood of success seems quite good since four Judges of this court, albeit by different rationales, agree at least that petitioner fits under the beneficial umbrella of the regulation; and the balance of equities would appear to favor petitioner.
The reasons for my position in this case are as plain as the inappropriate criticism of the dissent that I have engaged in ipse dixit decision making. It should not be that difficult to appreciate my view that no more need be decided or said in this case under the traditional discipline of the judicial process. Interstitial adjudication, when a court cannot institutionally fashion a majoritarian rule of law either because it is fragmented or because it is not omnipotent, is quite respectable jurisprudence. We just do not know the answers or impli *216 cations for an exponential number of varied fact situations, so we should do what courts are in the business of doing— deciding cases as best they fallibly can. Applying the unvarnished regulatory word, "family”, as written, to the facts so far presented falls within a well-respected and long-accepted judicial method.